# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER NAVARRO VILLEGAS, et al., | Case No. 1:22-cv-01628-ADA-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | |
| FORD MOTOR COMPANY, | (ECF No. 16) |
| Defendant. | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

**I.**

**INTRODUCTION**

Javier Navarro Villegas and Luis Navarro Villegas ("Plaintiffs") bring this action against Defendant Ford Motor Company ("Defendant" or "Ford"), pursuant to California's Song–Beverly Consumer Warranty Act ("Song–Beverly Act"). Currently before the Court is Plaintiffs' motion to remand. (ECF No. 16.) The matter was referred to the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(7).

A hearing on the motion was held on April 26, 2023. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, the arguments presented at the April 26, 2023 hearing, as well as the Court's file, the Court issues the following findings and recommendations that recommend denying Plaintiffs' motion to remand.

1

## II.

## BACKGROUND

On March 10, 2021, Plaintiffs entered into a warranty contract with Defendant regarding a 2021 Ford F-150 (the "Subject Vehicle"), for a total price of $77,396.44.  (Compl. ¶ 15, ECF No. 1-3 at 4.)[1]  Plaintiffs allege defects and nonconformities to warranty manifested during the warranty period, including but not limited to, engine, transmission, and electrical.  (Compl. ¶¶ 16-17.)  Plaintiffs allege they delivered the Subject Vehicle to an authorized repair facility but Defendant was unable to conform the Subject Vehicle to the express warranty after a reasonable number of repair attempts.  (Compl. ¶¶ 18-19.)

Plaintiffs initiated this action on November 14, 2022, in the Superior Court of California, County of Fresno.  (ECF No. 1-3 at 2.)  Plaintiffs bring causes of action for: (1) violation of the Song-Beverly Act, breach of express warranty; and (2) violation of the Song-Beverly Act § 1793.2.[2]  (Compl. ¶¶ 14-39.)  On December 21, 2022, Defendant removed this action to the United States District Court for the Eastern District of California.  (ECF No. 1.)

On February 24, 2023, Plaintiffs filed the instant motion for remand.  (Pls.' Mot. Remand ("Mot."), ECF No. 16.)  On March 2, 2023, the District Judge referred the matter to the undersigned for the preparation of findings and recommendations and/or other appropriate action. (ECF No. 17.)  On the same date, the Court reset the hearing on the motion for remand to be held before the assigned Magistrate Judge, on April 5, 2023.  (ECF No. 18.)

Defendant did not file an opposition to the motion by the deadline to do so, and on March 22, 2023, Plaintiffs filed a statement indicating such lack of filed opposition.  (ECF No. 20.)  On March 24, 2023, Defendant filed a motion to extend, *nunc pro tunc*, the deadline to file the opposition brief due to a calendaring error.  (ECF No. 21.)  On  March 28, 2023, the Court granted the motion for extension of time, continued the hearing on the motion to remand until

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2]  The second cause of action is erroneously labeled the third cause of action, however, there are only two causes of action present in the complaint.

2

1  April 26, 2023, and extended the deadline for Plaintiff to file a reply brief.  (ECF No. 22.) [3]  The

2  Defendant's opposition brief was filed concurrently with the motion for extension of time.

3  (Def.'s Opp'n Mot. Remand ("Opp'n"), ECF No. 21-4 at 2-19.)  On April 10, 2023, Plaintiffs

4  filed a reply brief.  (Pls.' Reply ("Reply"), ECF No. 23.)

5        On April 26, 2023, the parties appeared before the Court for a hearing on the motion to

6  remand.  (ECF No. 24.)  Counsel Maite Colon appeared by videoconference for Plaintiffs.

7  Counsel Sarah Lambert appeared by videoconference for Defendant.

8  **III.**

9  **LEGAL STANDARD**

10        A defendant may remove a matter to federal court if the district court would have original

11  jurisdiction.  See 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

12  Federal district courts have original jurisdiction over all civil actions between citizens of different

13  states in which the amount in controversy exceeds $75,000, exclusive of costs and interest.  28

14  U.S.C. § 1332(a)(1).  A motion to remand is a proper procedure to challenge a removal based on

15  lack of jurisdiction.  See 28 U.S.C. § 1447(c).  "If at any time before final judgment it appears

16  that the district court lacks subject matter jurisdiction, the case shall be remanded."  Id.

17        Ultimately, "[t]he removal statute is strictly construed against removal jurisdiction, and

18  the burden of establishing federal jurisdiction falls to the party invoking the statute."  California

19  ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); see also

20  Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009)

21  (same).  Thus, if there is any doubt as to the right of removal, a federal court must reject

22  jurisdiction and remand the case to state court.  Matheson v. Progressive Specialty Ins. Co., 319

23  F.3d 1089, 1090 (9th Cir. 2003); see also 28 U.S.C. § 1447(c) ("If at any time before final

24  judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

25  remanded.").

26  ///

27

28  ---

[3]  At the hearing the Court invited any additional argument concerning the granting of the extension of time for Defendant to file the opposition brief, and Plaintiffs declined to present any further objection or challenge.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV.

## DISCUSSION

Plaintiffs argue Defendant has failed to meet its burden to establish by a preponderance of the evidence that Plaintiffs will obtain such damages, penalties and fees at trial thereby exceeding the required $75,000 minimum amount in controversy to establish diversity jurisdiction. Plaintiffs do not present any challenge regarding the citizenship of the parties as satisfying the requirements for diversity jurisdiction.

### A.      Preliminary Issue of Whether the Motion to Remand is Untimely

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).  Defendant argues that because Plaintiffs did not file the motion to remand until after the expiration of the thirty (30) day period, the motion should be denied to the extent it is predicated on procedural defects in the removal process.  (Opp'n 9.)  Plaintiffs respond that Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. 1447(c).

To the extent Defendant is only arguing that if Plaintiffs' motion for removal touches upon procedural defects rather than jurisdictional, the raising of procedural defects would be foreclosed as untimely.  See Ceja-Corona, 2013 WL 638293, at *4 n.2 ("The Court finds that, pursuant to section 1447(c), were Plaintiff to raise subsequent issues unrelated to diversity of citizenship and the amount in controversy in its motion for remand such arguments are waived due to its untimely filed motion to remand.").  However, Defendants did not clearly explain in briefing any alleged procedural defects Plaintiffs' motion may rest on that are separate from the jurisdictional issue, and at the hearing, Defendant conceded the motion to remand is targeted at jurisdictional issues.  Accordingly, the Court finds the instant motion to remand is properly presented as to the issue of subject matter jurisdiction.  See 28 U.S.C. § 1447(c); Ceja-Corona v. CVS Pharmacy, No. 1:12-CV-01703-AWI, 2013 WL 638293, at *3–4 (E.D. Cal. Feb. 12, 2013) ("Courts routinely refer to the amount in controversy as the required or statutory 'jurisdictional

4

amount,' and find it is a jurisdictional requirement that cannot be waived . . . [w]hile Plaintiff has waived any procedural objections to the notice of removal by filing an untimely motion to remand, the text of section 1447(a) specifically excludes a motion to remand based upon lack of subject matter jurisdiction from the thirty day window.") (footnote omitted), <u>report and recommendation adopted,</u> No. 1:12-CV-01703-AWI, 2013 WL 1281581 (E.D. Cal. Mar. 27, 2013); <u>Mehta-Shreve v. TJX Companies, Inc.,</u> No. 219CV01086RFBDJA, 2020 WL 1853607, at *2 (D. Nev. Apr. 13, 2020) ("Plaintiff's motion to remand is based on a claim that there is not complete diversity in this case, which is a challenge to the Court's subject matter jurisdiction[,] [a]ccordingly, the motion to remand is timely filed."). The Court proceeds to the merits of the parties' arguments.

**B.      Amount in Controversy**

The amount in controversy is an "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." <u>Lewis v. Verizon Commc'ns, Inc.,</u> 627 F.3d 395, 400 (9th Cir. 2010). Thus, "[i]n determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." <u>Henry v. Cent. Freight Lines, Inc.,</u> 692 F. App'x 806, 807 (9th Cir. 2017).

As inherent in the parties' framing of legal authorities and arguments in briefing, and as the Court's review of the relevant authorities, there is some difference in the way courts have explained and applied the standards pertaining to establishing the amount of controversy.

For example, Defendant cites to <u>Guglielmino v. McKee Foods Corp.,</u> 506 F.3d 696, 698–99 (9th Cir. 2007), and both parties cite to <u>Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka,</u> 599 F.3d 1102, 1106 (9th Cir. 2010).

In <u>Guglielmino</u>, the Ninth Circuit was presented with the question of what "is defendant's burden of proof when plaintiffs move to remand pursuant to 28 U.S.C. § 1447(c) and their state-court complaint specifies that their damages are less than the jurisdictional requirement?" <u>Guglielmino</u>, 506 F.3d at 698–99. The Ninth Circuit explained that caselaw supported the

existence of three different burdens of proof which may be placed on a removing defendant.[4]  The

first two described are relevant to the issues at hand here:

> [W]e have identified at least three different burdens of proof which
> might be placed on a removing defendant under varying
> circumstances. In *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d
> 398 (9th Cir.1996), we noted that when a complaint filed in state
> court alleges on its face an amount in controversy sufficient to meet
> the federal jurisdictional threshold, such requirement is
> presumptively satisfied unless it appears to a "legal certainty" that
> the plaintiff cannot actually recover that amount. *Id.* at 402
> (discussing *Garza v. Bettcher Indus., Inc.,* 752 F.Supp. 753, 755–56
> (E.D.Mich.1990)); *see also St. Paul Mercury Indemnity Co. v. Red
> Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)
> (stating that when a complaint filed pleads *more* than the
> jurisdictional amount "the sum claimed by the plaintiff controls if
> the claim is apparently made in good faith" and that "[i]t must
> appear to a legal certainty that the claim is really for less than the
> jurisdictional amount to justify dismissal").
>
> The second situation we have identified is where it is unclear or
> ambiguous from the face of a state-court complaint whether the
> requisite amount in controversy is pled. In such a circumstance, we
> apply a preponderance of the evidence standard. *Sanchez,* 102 F.3d
> at 404 ("[T]he removing defendant bears the burden of establishing,
> by a preponderance of the evidence, that the amount in controversy
> exceeds[the jurisdictional amount]. Under this burden, the
> defendant must provide evidence establishing that it is 'more likely
> than not' that the amount in controversy exceeds that amount.").
> We have since applied the preponderance holding in *Sanchez* to
> complaints filed under the Class Action Fairness Act ("CAFA")
> that do not specify a particular amount in controversy. *Abrego v.
> Dow Chemical Co.,* 443 F.3d 676, 683 (9th Cir.2006) (per curiam).

Guglielmino, 506 F.3d at 699–700 (footnote omitted).

In Geographic Expeditions, the Ninth Circuit appeared to describe the first "legal

certainty" standard as applying to a challenge where the plaintiff chooses to file a complaint in

federal court.  Thus, the Ninth Circuit described that on one hand, "[w]here the plaintiff originally

files in federal court, 'the amount in controversy is determined from the face of the pleadings.' "

Geographic Expeditions, 599 F.3d at 1106 (quoting Crum v. Circus Enterprises, 231 F.3d 1129,

1131 (9th Cir. 2000)).  In such case, "[t]he amount in controversy alleged by the proponent of

---

[4]  The third pertains to class actions that specified a lower amount: "[I]n the CAFA context [] when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.' "  Guglielmino, 506 F.3d at 700 (quoting Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 1000 (9th Cir.2007)).

federal jurisdiction-typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith," and "[t]o justify dismissal, it must  appear to a legal certainty that the claim is really for less than the jurisdictional amount."  Id.

"On the other hand, in a case that has been removed from state court to federal court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction, the proponent of federal jurisdiction—typically the defendant in the substantive dispute—has the burden to prove, by a preponderance of the evidence, that removal is proper."  Geographic Expeditions, 599 F.3d at 1106–07 (citing Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992)).  "The preponderance of the evidence standard applies because removal jurisdiction ousts state-court jurisdiction and 'must be rejected if there is any doubt as to the right of removal in the first instance.' "  Id. (quoting Gaus, 980 F.2d at 566).

Thus, the Ninth Circuit appeared to state that where an action is removed from state court by a defendant, and the removal is challenged, the defendant generally has the burden under the preponderance of evidence standard, and did not aver that the legal certainty test would apply where an action is both removed and the complaint clearly states the amount in controversy as rising above the jurisdictional minimum amount of $75,000.00.  Nonetheless, it appears the legal certainty standard could apply in the situation where a complaint clearly alleges a monetary amount in excess of the minimum.  See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403–04 (9th Cir. 1996) ("Although we did not explicitly hold in Gaus that a removing defendant must prove the existence of the amount in controversy 'by a preponderance of evidence,' it is clear from our reliance on McNutt that this was our intent . . . [and] [a]ccordingly, we hold that in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence.") (citations omitted); Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) ("Where, as here, 'the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $[75],000.' " (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir.1997))); Huynh v. Nordstrom, Inc., No. 822CV02046DOCJDE, 2023 WL 1992194, at *1 (C.D. Cal. Feb. 14, 2023)

("Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold . . . [but] [i]f the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is 'presumptively satisfied.' " (citing Guglielmino, 506 F.3d at 699)).   Nonetheless, as explained below, the Court does not find Plaintiffs have clearly specified a precise amount in controversy in the complaint.   Therefore, the Court finds Defendant as the removing party bears the burden of showing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.   See Guglielmino, 506 F.3d at 699; Geographic Expeditions, 599 F.3d at 1106–07.

The preponderance burden requires the defendant to show it is "more likely than not" that the amount in controversy exceeds the jurisdictional amount.   Sanchez, 102 F.3d at 404; Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013) (same).   To determine if the amount in controversy is met, the district court considers the complaint, allegations in the removal petition, "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," and evidence filed in opposition to the motion to remand. Kroske, 432 F.3d at 980 (citation omitted); Lenau v. Bank of Am., N.A., 131 F. Supp. 3d 1003, 1005 (E.D. Cal. 2015); Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002) (per curiam).

    1.   Actual Damages

"In an action brought pursuant to the Song-Beverly Act, a plaintiff may recover 'an amount equal to the actual price paid or payable by the buyer,' *reduced by* 'that amount directly attributable to use by the buyer.' "   Cortez Martinez v. Ford Motor Co., No. 118CV01607LJOJLT, 2019 WL 1988398, at *3 (E.D. Cal. May 6, 2019) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)-(C)) (emphasis added by quoting source); see also Carla Vega et al., Plaintiff, v. FCA US LLC, et al., Defendants. Additional Party Names: Leonel Torres, No. 221CV05128VAPMRWX, 2021 WL 3771795, at *3 (C.D. Cal. Aug. 25, 2021) (defining actual damages in same manner).   Such reduction, referred to by courts as the "use offset" is based on the number of miles the buyer has driven prior to the first attempt at repair.   Vega, 2021 WL

8

1  3771795, at *3.

2      The Song-Beverly Act provides a method for calculating the use offset: "The amount

3  directly attributable to use by the buyer shall be determined by multiplying the actual price of the

4  new motor vehicle paid or payable by the buyer, including any charges for transportation and

5  manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its

6  numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first

7  delivered the vehicle to the manufacturer or distributor, or its authorized service and repair

8  facility for correction of the problem that gave rise to the nonconformity."  Cal. Civ. Code §

9  1793.2(d)(2)(C).

10      **a.      Plaintiffs' Arguments**

11      Plaintiffs argue that while the notice of removal identifies the base figure of its amount-in-

12  controversy analysis as being $77,396.44, which is the total sales price of the Subject Vehicle,

13  Defendant did not provide information regarding the vehicle's use or condition, which Plaintiffs

14  state is required.  See Petropolous v. FCA US, LLC, No. 17-CV-0398 W (KSC), 2017 WL

15  2889303, at *6 (S.D. Cal. July 7, 2017) (recognizing the mileage offset for damages under the

16  Song-Beverly Act); Ferrer v. FCA US LLC, Case No.: 17-CV-0530-AJB-BGS, 2017 WL

17  2875692, at *3 (S.D. Cal. July 6, 2017) (including the full value of the installment contract in the

18  amount in controversy, but applying a mileage offset); Kotulski v. FCA US LLC, Case No.: 17-

19  CV-0527- AJB-BGS, 2017 WL 2705429, at *3 (S.D. Cal. June 23, 2017) (same).

20      Plaintiffs submit that here, the Retail Installment Sales Contract ("RISC"), shows that the

21  purchase price of the vehicle was $77,396.33, and that under the Song-Beverly Act, a mileage

22  offset is taken from the amount paid or payable for usage from the date of purchase to the first

23  repair.  Plaintiffs argue this omission alone is enough to invalidate Ford's "calculation" to

24  establish the amount in controversy as it has failed to show by a preponderance of the evidence

25  what actual damages can amount to in this action.  See Vega, No. 2:21-cv-05128-VAP-MRWx,

26  2021 WL 3771795, *3 (C.D. Cal Aug. 25, 2021) (granting remand because the defendants failed

27  to account for the plaintiff's vehicle's use offset); Schneider v. Ford Motor Co., 756 F. App'x

28  699, 701 n.3 (9th Cir. 2018) ("Consideration of the Use Offset was appropriate."); Mullin v. FCA

1   US, LLC, No. CV 20-2061-RSWL-PJW, 2020 WL 2509081, *3 (C.D. Cal. 2020) ("Because

2   Defendants neglected to take the mileage offset into account, they failed to meet their burden of

3   showing the plaintiff's actual damages based on the purchase price of the vehicle."); Maciel v.

4   BMW of N. Am., LLC, CV-17-04268-SJO AJWx), 2017 WL 8185859, *2 (C.D. Cal. 2017)

5   (finding amount in controversy not satisfied given the defendant's failure to consider set-off

6   amount); Davidson v. Ford Motor Co., No. EDCV201965FMOSHKX, 2020 WL 6119302, at *2

7   (C.D. Cal. Oct. 16, 2020) (same).

8          **b.      The Court Finds that Defendant's Proffered Actual Damages Calculation that
           Takes into Account the Use Offset is Supported by a Preponderance of the
9          Evidence**

10         i.      <u>The Court Finds the Alleged Damages Unclear from Face of Complaint</u>

11   Defendant first submits that:

12              As set forth below, the amount in controversy in this case easily
                exceeds $75,000. This is based on Plaintiffs' allegations that they
13              (1) purchased the vehicle for $77,396.44, (2) seeks damages that
                consist of "reimbursement of the price paid for the vehicle., and (3)
14              demand "a civil penalty of up to two times the amount of actual
                damages."
15

16   (Opp'n 10 (footnotes omitted).  Of note, there are no ending quotation marks under number (2)

17   excerpted above in Defendant's quotation from paragraph 23 of Plaintiffs' complaint.   This

18   portion of the complaint reads: "Under the Act, Plaintiffs are entitled to reimbursement of the

19   price paid for the vehicle *less that amount directly attributable to use by the Plaintiffs prior to the

20   first presentation to an authorized repair facility for a nonconformity*."  (Compl. ¶ 23 (emphasis

21   added).)  Defendant states that based on paragraph 23, "[t]here is no uncertainty as to the actual

22   damages claimed by Plaintiff," and submits that courts find in such cases the legal certainty

23   standard is applicable.  Defendant argues Plaintiffs' claim for the full price paid for their vehicle

24   thus resolves any ambiguity regarding damages since Plaintiffs plead an amount in excess of the

25   required amount in controversy.  (Opp'n 7, 12.)

26          However, here, the Court finds it must consider Plaintiffs' statement in the second clause

27   of paragraph 23 stating "less that amount directly attributable to use by the Plaintiffs prior to the

28   first presentation to an authorized repair facility for a nonconformity."  (Compl. ¶ 23.)  Therefore,

1  the Court does not accept Defendant's first line of argument that the complaint's alleged actual

2  damages are clear from the face of the complaint, and that the legal certainty standard would

3  apply.  See Mullin, 2020 WL 2509081, at *3 ("Because removal jurisdiction is strictly construed

4  against removal, the Court is not persuaded by Defendants' reading of the Complaint."); Messih

5  v. Mercedes-Benz USA, LLC, No. 21-CV-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal.

6  June 24, 2021) ("The Prayer for Relief lists various requests for damages without specifying

7  estimated amounts of damages sought . . . [b]ecause the amount in controversy is unclear from the

8  face of the Complaint, MBUSA must show by a preponderance of the evidence that the amount in

9  controversy exceeds $75,000.").

10          ii.      The Court finds Restitution Damages Should not be Utilized without Use Offset

11          Next, Defendant next contends that additional evidence as to Plaintiffs' actual damages

12  are established by the Retail Installment Sales Contract.  Defendant submits that pursuant to the

13  RISC, at the time of purchase, the contract purchase price of the Subject Vehicle was calculated

14  by taking the cash price of the vehicle in the RISC ($52,375.00), adding sales tax ($4,183.69), as

15  well as license and other fees ($728.75), for a total purchase price of $57,287.44.  (Decl. Eric D.

16  Sentlinger Supp. Opp'n ("Sentlinger Decl. ¶ 4, ECF No. 21-5 at 2.)  Defendant additionally

17  submits that finance charges paid, or to be paid, were not included in calculating the "purchase

18  price," as required by California law, because of the difficulty of calculating the finance charges

19  paid based on incomplete information, and optional items such as optional service contracts and

20  GAP insurance were also not included in the vehicle price.  (Opp'n 12 n.5; Sentlinger Decl. ¶ 4.)[5]

21

22  [5] In this section of briefing, as for evidence at time of removal, Defendant argues the notice of removal "need not contain evidentiary submissions" to adequately plead the amount in controversy; it need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee Basin Operating Co.,

23  LLC v. Owens, 574 U.S. 81, 84, 135 S. Ct. 547, 551, 190 L. Ed. 2d 495 (2014) ("A statement 'short and plain' need not contain evidentiary submissions.").  In reply Plaintiffs argue Defendant's reliance on Dart is misplaced as that

24  case involved the Class Action Fairness Act ("CAFA"), and there is no anti-removal presumption under CAFA.  See Dart, 574 U.S. at 89 ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which

25  Congress enacted to facilitate adjudication of certain class actions in federal court.").  Plaintiffs argue Defendant must prove the amount in controversy threshold has been met by a preponderance of the evidence.  The Court agrees

26  with Plaintiffs that the appropriate standard is the preponderance of evidence standard, as explained herein, however, the Court does not find Defendant is foreclosed from presenting such evidence at the time of opposition to the motion

27  to remand.  See Luna v. FCA US LLC, No. 21-CV-01230-LHK, 2021 WL 4893567, at *8 (N.D. Cal. Oct. 20, 2021) ("Although FCA has not calculated the mileage offset in the Notice of Remand, this is not fatal because FCA

28  provides the calculations in FCA's opposition to the motion for remand."); Kroske, 432 F.3d at 980; Lenau, 131 F. Supp. 3d at 1005); Cohn, 281 F.3d at 840 n.1.

Defendant argues that given this calculated amount paid or payable by Plaintiffs for the Subject Vehicle (purchase price) of $57,287.44, and Plaintiffs' demand for "actual" damages plus two times civil penalties ($114,574.88), the result is the total amount in controversy is $171,862.32.  (Opp'n 13.)  Defendant submits this establishes the requisite amount as under the Song-Beverly Act , a plaintiff can collect restitution "in an amount equal to the actual price paid or payable by the buyer" for the automobile.  See Cal. Civ. Code § 1793.2(d)(2)(B) ("In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.").

However, while Plaintiffs' complaint's prayer for relief does request "rescission of the purchase contract and restitution of all monies expended," it does not expressly request the price "payable."  Plaintiffs' reply does not appear to directly mention arguments pertaining to restitution, however, Defendant has not convincingly demonstrate to the Court that the use offset should not be included in the restitution calculation, particularly given the face of Plaintiffs' complaint at paragraph 23, and the prayer for relief.

The Court first acknowledges that the statute uses the word "may" in relation to the use offset: "When restitution is made pursuant to subparagraph (B), the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity."  Cal. Civ. Code § 1793.2(d)(2)(C).  In Selinger, the court recently explained the differing approaches to the issue of whether evidence must be presented regarding the mileage offset to show, by a preponderance of the evidence, that the amount in controversy requirement is met:

The Ninth Circuit has not addressed this precise question. However,

1

2

3

4

5

6

7

8

9

10

11

12

> Courts in this Circuit have taken several different approaches to address this issue. First, courts have looked to the plaintiff's complaint to determine whether it requests "the entire contract price," as opposed to the contract price minus deductions. If the complaint has not included deductions, courts have held the defendant did not need to present evidence regarding this mileage offset for purposes of the amount-in-controversy requirement. [citations]
>
> As a second approach, other courts have held that the mileage offset, along with other vehicle-value reductions, are simply "not appropriate" for consideration for determining the amount-in-controversy. [citations]
>
> Still other courts have held that a plaintiff should present evidence regarding the mileage offset when arguing the requisite amount-in-controversy. [citations]
>
> Based on other Ninth Circuit caselaw discussing the amount in controversy requirement, this Court agrees with the courts that have held a removing defendant is not obligated to present evidence regarding the mileage offset to establish the amount-in-controversy requirement for claims arising under the Song Beverly Act.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Selinger v. Ford Motor Co., No. 2:22-CV-08883-SPG-KS, 2023 WL 2813510, at *7–8 (C.D. Cal. Apr. 5, 2023).

Here, given the allegations in the complaint, including specifically stating Plaintiffs are entitled to "reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiffs prior to the first presentation to an authorized repair facility," (Compl. ¶ 23), as well as a lack of a specific monetary amount demanded, the Court finds Defendant is required to demonstrate by a preponderance of the evidence that the use offset does not reduce the amount in controversy to a level below the jurisdictional minimum. See Geographic Expeditions, 599 F.3d at 1106–07; Petropolous, 2017 WL 2889303, at *6 ("Plaintiffs' restitution would be $35,678 subtracted by a mileage offset of $7,225.09."); Ferrer, 2017 WL 2875692, at *2–3 ("As noted above, however, this figure does not end the inquiry [as] the restitution awardable under section 1793.2(d)(2)(B) must be reduced by the amount directly attributable to Ferrer's use of the Jeep prior to the first repair or attempted repair."); Nuguid v. Mercedes-Benz USA, LLC, No. 321CV00435BENBLM, 2021 WL 5356240, at *8 (S.D. Cal. Nov. 17, 2021) ("[R]estitution in lemon law cases requires calculation of the 'mileage' or 'use' offset set out by statute."); Canesco

13

v. Ford Motor Co., 570 F. Supp. 3d 872, 898 (S.D. Cal. 2021) ("The restitutionary statutory repurchase of a vehicle awarded under the Song Beverly Act must be 'reduced by ... that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor.' "); Luna v. FCA US LLC, No. 21-CV-01230-LHK, 2021 WL 4893567, at *8 (N.D. Cal. Oct. 20, 2021) ("[T]he Court first finds that the restitution amount must include the 'mileage offset.' "); Alvarado v. Fca US, LLC, No. EDCV17505JGBDTBX, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (same); Messih v. Mercedes-Benz USA, LLC, No. 21-CV-03032-WHO, 2021 WL 2588977, at *5 (N.D. Cal. June 24, 2021) (same).

In either regard, whether or not the Plaintiffs' argued method of calculating, the use offset, *must* be factored, the evidence pertaining to the use offset and the use offset calculation's results weigh in favor of Defendant, as the Court now explains.

### iii. Defendant has Demonstrated by a Preponderance of the Evidence that the Use Offset Calculation Results in Reaching the Jurisdictional Minimum Amount in Controversy

Defendant frames Plaintiffs' position as having submitted no evidence of their own to support what the use or mileage offset may be, but appear to argue it is so substantial that it would reduce Plaintiffs' actual damages to an amount under $25,000, which in turn, would reduce the amount in controversy ("actual damages" plus an award of two times civil penalties) to under $75,000.  While Defendant disputes that a mileage offset must be factored, Defendant assuming *arguendo* the mileage offset should be considered has provided the Court with a pointed calculation based on evidence of the service records pertaining to the Subject Vehicle.

Turning to the calculation, Plaintiffs purchased the Subject Vehicle new, with 8 miles on the odometer.  (Sentlinger Decl., Ex. A, ECF No. 21-5 at 5.)  Defendant proffers Plaintiffs first delivered the Subject Vehicle to Lithia Ford Lincoln of Fresno on or about August 12, 2021, for a complaint of a ticking sound coming from the engine compartment.  (Sentlinger Decl., Ex. B, ECF No. 21-5 at 13.)  The August 21, 2021 repair order reflects the mileage at the time of this presentation was 2,356.  (Id. at 14.)  Thus using that mileage reading, the amount directly attributable to use by Plaintiffs prior to the time they first delivered for correction of the problem that gave rise to the nonconformity was 2,348 miles.

Using the Song-Bervely offset calculation, 2,348 miles is divided by 120,000 miles, and then multiplied by the purchase price of the Subject Vehicle ($57,287.44) to obtain the offset figure of $1,120.92.  Subtracting the offset amount from the total cost of the Subject vehicle brings the amount of "actual" damages to $56,166.52.  Assuming the Court accepts factoring an additional civil penalty of two times the actual damages, this would bring the total amount in controversy to $168,499.56 (*i.e.,* Plaintiffs' actual damages of $56,166.52 plus a 2x civil penalty of $112,333.04).

Defendant additionally submits evidence of the second time the Subject Vehicle was delivered for correction of a problem that gave rise to the nonconformity, March 26, 2022.  On that date, Plaintiffs delivered the Subject Vehicle to Lithia Ford Lincoln of Fresno for issues pertaining to the battery and wiper motor.  (Sentlinger Decl. Ex. C., ECF No. 21-5 at 16.)  The March 22, 2022 repair order reflects that the mileage at the time of this presentation was 9,673.  (Id. at 17.)

Using the Song-Bervely Act offset calculation, the mileage offset based on this second presentation would be $4,614.02, which would reduce the "actual" damages to $52,673.42.  Adding Plaintiffs' claim for a two times civil penalties would bring the total amount in controversy to $158,020.26.

The Court finds these calculations supported by the evidence submitted by Defendants, and finds the calculations correctly computed based on the Song-Bervely Act's formula.  Significantly, as for Defendants' proffered mileage use offset calculations, Plaintiffs have presented no dispute in reply to Defendant's evidence concerning the mileage at the initial or second service dates, and instead, appear to only argue that such baseline actual damages calculation is not enough because the civil penalties and attorneys' fees calculations are not supported by a preponderance of the evidence.  Plaintiffs presented no additional challenge at the hearing.  Accordingly, the Court finds Defendants' calculations of the actual damages as offset by the mileage is supported by the preponderance of the evidence.

As a final note, While Plaintiffs primarily challenge the lack of evidence in the notice of removal and lack of factoring the use offset therein, as noted above the Court finds it appropriate

for a defendant to submit such evidence in support of removal in an opposition to a motion to remand, and is not necessarily required to provide such evidence in the notice of removal. Further, the Court notes that many of the cases that Plaintiff cites to in the initial motion where a court found that a defendant failed to demonstrate the use offset calculation meeting the jurisdictional minimum are distinguishable from the facts here.  For example, in <u>Vega</u>, the deficient showing and calculation involved a lease.   <u>Vega</u>, 2021 WL 3771795, at *3 ("As a threshold matter, Defendant fails to reduce the actual damages to account for Plaintiffs' use offset [and] [a]dditionally, Defendant's calculation entirely fails to account for the fact that the car was leased, not purchased.").  Further, Plaintiffs cite <u>Mullin</u>, which the Court finds distinguishable as Defendant here provides the two records of dates of service that would start the calculation, whereas in Mullin the defendant failed to provide any such evidence at the time of opposition, instead attempting to only rely on the allegations in the complaint:

> Here, Defendants failed to take into account the mileage offset in alleging that the amount in controversy exceeds the jurisdictional minimum. In fact, Defendants admit that they "would have needed to determine when and what was the first repair attempt" to calculate the appropriate mileage offset. Opp'n 6:18-24. But, Defendants argue, "that information was not contained in Plaintiff's Complaint." Id. at 6:24. However, Defendants could have submitted their own evidence in order to calculate the mileage offset; Plaintiff alleges that he "delivered the [ ] Vehicle to Defendant Shaver for substantial repair on at least one occasion." Compl. ¶ 59. As such, Defendant Shaver could have submitted its own repair records indicating the mileage on the Vehicle when it was delivered for repair, and calculated the appropriate mileage therefrom. <u>See</u> <u>Schneider v. Ford Motor Co.</u>, No. 5:19-CV-05545-EJD, 2020 WL 991531, at *4 (N.D. Cal. Mar. 2, 2020) ("Plaintiff's Complaint and exhibits do not indicate what the appropriate offset should be in this case. Defendants, however, attached an exhibit that reflects that the most recent repairs to Plaintiff's vehicle occurred at 75,943 miles on October 5, 2017."); <u>see also</u> <u>Cortez Martinez</u>, 2019 WL 1988398, at *4 (E.D. Cal. May 6, 2019) (allowing the defendant's calculation of the mileage offset for the purposes of establishing the amount in controversy based on an estimate defendant made about a reasonable amount of miles the plaintiff could have driven, absent any knowledge of the actual amount driven). Because Defendants neglected to take the mileage offset into account, they failed to meet their burden of showing Plaintiff's actual damages based on the purchase price of the vehicle.

<u>Mullin</u>, 2020 WL 2509081, at *3–4.

Because Plaintiffs have not challenged the evidence concerning the use offset, the Court

16

1  presumes it can accept the earlier date of service as starting the calculation resulting in a higher

2  amount of damages, however, when factoring the civil penalties, the calculation based on either

3  of the service dates yields a sufficient minimum amount of controversy when factoring the civil

4  penalties that the Court now turns to discuss.

5          2.      Civil Penalties

6        In addition to actual damages, a buyer who establishes a willful violation of the Song-

7  Beverly Act may also recover a civil penalty of up to "two times the amount of actual damages."

8  Cal. Civ. Code §§ 1794(c), (e)(1).  "District courts in the Ninth Circuit are split on whether to

9  include Song-Beverly Act civil penalties in calculations to assess the amount in controversy,

10  taking into account a plaintiff's pleadings."  See Ferguson v. KIA Motors Am. Inc., No. 2:20-CV-

11  01192-KJM-DB, 2021 WL 1997550, at *3 (E.D. Cal. May 19, 2021) (collecting and comparing

12  cases in Southern and Central Districts and finding "inclusion of civil penalties in calculating the

13  amount in controversy in this case is appropriate [as] plaintiffs allege defendant 'willfully

14  violated the provisions of this act [Song-Beverly] by knowing of its obligations to refund or

15  replace Plaintiffs' vehicle,' . . . and request a civil penalty based on California Civil Code section

16  1794(c).").  Some courts do not require a defendant to provide evidence beyond pointing to

17  claims arising under the Song-Beverly Act in the complaint; others require a defendant to point to

18  specific allegations in the complaint that support an award of punitive damages.  See id.; see also

19  Lopez v. Ford Motor Co., No. 820CV00186JLSJDE, 2020 WL 1922588, at *2 (C.D. Cal. Apr.

20  21, 2020) ("Courts as a matter of law, calculate the amount in controversy based upon the

21  maximum amount of civil penalties available to plaintiff.") (quoting Saulic v. Symantec Corp.,

22  No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007) (collecting

23  cases)).  Based on Plaintiff's allegations, the Court finds that inclusion of civil penalties in

24  calculating the amount in controversy is appropriate in this case.

25        Plaintiffs argue Defendant has not offered any evidence whatsoever to support an award

26  for civil penalties, and thus, it is unable to establish in its notice of removal what civil penalties

27  might be imposed, and merely points to Plaintiffs' civil penalties claim in their complaint and

28  asserts that this alone is sufficient to establish that the maximum amount of civil penalties should

be included in the amount in controversy.  Plaintiffs rely on the holding in <u>Zawaideh</u> and a number of Central District cases that have followed that or similar holdings in finding civil penalties under the Song-Beverly Act to be speculative for determining the amount in controversy.  Zawaideh v. BMW of North America, LLC, No. 17-CV-2151 W (KSC), 2018 WL 1805103, at *2 (S.D. Cal. Apr. 17, 2018); <u>Vega</u>, 2021 WL 3771795, *4; <u>Ronquillo v. BMW of North America, LLC</u>, No. 3:20-cv-1413-W-WVG, 2020 WL 6741317 (S.D. Cal. Nov. 17, 2020); <u>D'Amico v. Ford Motor Company</u>, No. CV 20-2985-CJC (JCx), 2020 WL 2614610 (C.D. Cal. May 21, 2020); <u>Sood v. FCA US, LLC</u>, NO. CV 21-4287- RSWL-SKx, 2021 WL 4786451 (C.D. Cal. Oct. 14, 2021); <u>Esparza v. FCA US LLC</u>, No. 2:21-cv- 01856-RGK-MRW, 2021 WL 949600, at *1 (C.D. Cal. Mar. 12, 2021); <u>Garcia v. FCA US LLC</u>, 2:20-cv-04779-VAP-MRWx, 2020 WL 4219614, *3 (C.D. Cal. July 22, 2020); <u>Chavez v. FCA US LLC</u>, No. 2:19-cv-06003-ODW (GJSx), 2020 WL 468909, *2 (C.D. Cal. 2020); <u>Lopez v. FCA US LLC</u>, No. 2:19-cv-07577-RGK-MRW, 2019 WL 4450427, *2 (C.D. Cal. Sep. 16, 2019); <u>Eberle v. Jaguar Land Rover N. Am., LLC</u>, No. 2:18-cv-06650-VAP (PLAx), 2018 WL 4674598, at *2 (C.D. Cal. Sept. 26, 2018) (collecting cases).

As an initial matter, the Court finds the discussion in <u>Cortez</u> appropriately addresses this issue, and the Court finds it can factor the Plaintiffs' request in the complaint for two times damages as a civil penalty to determine the amount in controversy:

> Plaintiffs argue Defendant has made no showing the civil penalty is more likely than not to be awarded in this case and cite *Zawaideh v. BMW of N.Am., LLC*, No. 17-cv-2151 (KSC), 2018 WL 1805103 (S.D. Cal. Apr. 17, 2018) for the proposition that a defendant must justify its assumption that an award of civil penalties would be appropriate in calculating the amount in controversy. In *Zawaideh*, the court determined that because the civil penalty under the Act is analogous to an award of punitive damages, calculating the amount in controversy with respect to those civil penalties should be performed in the same manner as punitive damages: introducing evidence of jury verdicts in cases involving analogous facts to establish the entitlement to and a reasonable amount of a civil penalty. *Id.* at 2.

> From the amount-in-controversy perspective, however, punitive damages are different from the award of Song-Beverly-Act civil penalties in an important aspect. While there is some logical appeal to treating the two alike for purposes of calculating the amount in controversy, calculating civil penalties in the same manner as

punitive damages results in placing more emphasis on an assessment of the amount defendant will be potentially liable *rather* than determining what has been put at issue by the plaintiff.

An award of punitive damages is bounded by constitutional due process limits, but there is no "bright-line ratio which a punitive damages award cannot exceed." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Constitutional due process under the Fourteenth Amendment requires that the measure of punishment to the defendant is "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* The upper limit of punitive damages must be assessed against (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 418 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996) ). When a plaintiff seeks punitive damages, determining what the upper limits of a punitive damage award could possibly be under those particular circumstances *requires* a comparison of analogous fact scenarios and awards in other cases. With the Song-Beverly Act's civil penalty, the upper limit of the awardable civil penalties is a bright line: no more than two times the actual damages – there is no question what the upper range of an award could be, and it is not necessary to compare other cases to determine how much has been put at issue. Once the upper limit of the civil penalty is established, there is no question how much could potentially be awarded by a jury. Requiring a defendant to show what award of civil penalties are likely to be awarded when the maximum award of civil penalties is already a known ratio shifts the amount-in-controversy inquiry to an assessment of how much a defendant is likely to be held liable – not how much the plaintiff has put at issue. Where a plaintiff properly alleges entitlement to the Act's civil penalty, which includes allegations of the requisite willfulness by the defendant, up to two times the amount of actual damages is put at issue whether or not that amount is ultimately awarded. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint). Because the maximum amount of the civil penalty is set by a known and calculable bright line, requiring the defendant to establish the likely amount of the civil penalty that is likely to be awarded shifts the focus, impermissibly in this Court's view, to an assessment of defendant's liability rather than what the plaintiff has placed into controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (restating basic principle that amount in controversy is "not a prospective assessment of [a] defendant's liability" but what is at stake in the underlying litigation).

Moreover, unlike punitive damages where a plaintiff does not typically seek a specific amount or ratio of punitive damages,

> Plaintiffs allege here that Defendant's conduct in failing to comply with the Song-Beverly Act was willful, and Plaintiffs specifically pray for a civil penalty "in the amount of two times Plaintiffs' actual damages." (Cmplt., p. 7, ¶ 5 (prayer for relief).) Because that is the amount of the civil penalty Plaintiff seeks, that amount has been expressly placed into controversy by the complaint. The reasonable amount of alleged actual damages is $25,115.40; two times that amount is $50,230.80 ($25,115.40 * 2).

Cortez Martinez v. Ford Motor Co., No. 118CV01607LJOJLT, 2019 WL 1988398, at *5–7 (E.D. Cal. May 6, 2019).  In addition this Court has included Song-Beverly Act civil penalties where a plaintiff's complaint references willful behavior and requests two times civil penalties based on such alleged willful behavior.  See Mpock v. FCA US LLC, No. 121CV00330NONESAB, 2021 WL 5356472, at *12 (E.D. Cal. Nov. 17, 2021) ("Indeed, the Court finds the allegations in the complaint plainly support Defendant's assumption that double penalties (the statutory maximum) should be included in the amount in controversy calculations [as] Plaintiff requests, multiple times and in no uncertain terms, 'a civil penalty of two times Plaintiff's actual damages' arising from Defendant's purported Song-Beverly violations."), report and recommendation adopted, No. 121CV00330NONESAB, 2021 WL 5966833 (E.D. Cal. Dec. 16, 2021).

The Court finds inclusion of civil penalties is, contrary to Plaintiffs' argument, warranted. As noted above, in determining the amount in controversy, the court must accept the allegations in the complaint as true and assume the jury will return a verdict in Plaintiff's favor on every claim.  Henry, 692 F. App'x at 807.  Here, the complaint plainly and repeatedly requests statutory penalties for the alleged violations of the Song-Beverly Act, and specifically alleges that such two times penalties are appropriate because of Defendant's willful failure.  Plaintiffs' first cause of action for breach of express warranty under the Song-Beverly Act, states, "Plaintiffs are entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for FORD's willful failure to comply with its responsibilities under the Act."  (Compl. ¶ 26.)  Plaintiffs' second cause of action (erroneously labelled the third cause of action), for violation of the Song-Beverly Act § 1793.2, states "Plaintiffs are entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages *in that* FORD has willfully failed to comply with its responsibilities under the Act."  (Compl. ¶ 39 (emphasis

20

added).)   Plaintiffs' prayer for relief requests a "civil penalty in the amount of two times Plaintiffs' actual damages." (Compl. at p. 5, ECF No. 1-3 at 6.)   Accordingly, the Court finds inclusion of statutory penalties in the amount in controversy calculations is reasonably supported by the language in the complaint; the allegations in the complaint plainly support Defendant's assumption that double penalties (the statutory maximum) should be included in the amount in controversy calculations.   As the Court previously noted, the amount in controversy is not "a prospective assessment of defendant's liability," but an "estimate of the total amount in dispute." Lewis, 627 F.3d at 400.   Further, in evaluating the amount in controversy, the Court must accept Plaintiff's allegations as true and assume Plaintiff will be successful on all of his claims.   Henry, 692 F. App'x at 807.   Here, a plain reading of the complaint reveals Plaintiffs have put up to the maximum statutory penalty for Song-Beverly Act violations at issue in this action.

To the extent Plaintiffs argue the penalty calculations are impermissibly speculative because they are derived from an unsupported actual damages valuation, the Court has determined that Defendant sufficiently met its preponderance burden to establish actual damages based on summary-judgment-style evidence and the language of the complaint.   Thus in this regard, in addition to finding generally it to be appropriate to consider requests for civil penalties to put such amount at issue, the Court finds many of the cases cited by Plaintiffs to be distinguishable, in that the finding that civil penalties were speculative was often grounded at least in part in the failure to establish the actual damages that form the basis for the calculation of the civil penalty.   See Vega, 2021 WL 3771795, at *3 ("Defendant has not pointed to any specific allegations in the complaint or notice of removal suggesting that the civil penalty would be awarded, or how much it might be if it were." (citing Zawaideh, 2018 WL 1805103, at *2)); Chavez v. FCA US LLC, No. 219CV06003ODWGJSX, 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020) ("Foremost, the Sale Contract does not necessarily reflect the amount-in-controversy [as] [h]ere, Chavez requests restitution for all money paid to FCA; yet, FCA fails to indicate an amount of payments made[;]. . . .   [a]dditionally, FCA attempts to offset the Vehicle mileage using a dated repair order that occurred a month after Chavez purchased the Vehicle and almost three years before Chavez brought suit in state court . . . [thus] [i]f the amount of actual damages

is speculative, however, an attempt to determine the civil penalty is equally uncertain . . . FCA has not offered any evidence to support such an award, and thus, the Court is unable to determine what civil penalties might be imposed."); Garcia, 2020 WL 4219614, at *3 ("Plaintiff contends that Defendant has not even attempted to ascertain the mileage offset or acknowledge that such a calculation exists in determining Plaintiff's damages [and] [w]ithout more information, the Court cannot give weight to Defendant's allegations of actual damages . . . [thus] [i]f the amount of actual damages is speculative, however, an attempt to determine the civil penalty is equally uncertain [and] [m]oreover, Defendant has not pointed to any specific allegations in the action suggesting that the civil penalty would be awarded, or how much it might be if it were."); Eberle, 2018 WL 4674598, at *2 ("While the car's purchase price is considerable, the Act's statutory offset could significantly lessen Plaintiff's actual damages[;] Defendant has offered no maintenance record or any other facts to assist the Court in determining what the actual damages might be without resorting to speculation . . . [and] [i]f the amount of actual damages is speculative, however, an attempt to determine the civil penalty is equally uncertain . . . [and] Defendant, however, has not pointed to any specific allegations in the action suggest that the civil penalty would be awarded, or how much it might be if it were."); Sood, 2021 WL 4786451, at *5 ("First, Plaintiffs are entitled to a civil penalty only if Defendant's violations were willful, and Defendant has not provided any evidence, nor pointed to any allegations in the Complaint, to support Plaintiffs' entitlement to civil penalties . . . [a]dditionally, given that Defendant has not met its burden in establishing the amount of actual damages, it follows that determining the amount of civil penalties likely to be awarded is also uncertain . . . Defendant provides no support that any civil penalty would be awarded or what the amount of any civil penalty would be in this case."); D'Amico, 2020 WL 2614610, at *3 (declining to assume civil penalties after previously holding that "[g]iven Defendant's failure to account for both the fact that the car was leased and for the use offset, Defendant has failed to carry its burden as to Plaintiff's actual damages.").

Accordingly, based on the allegations in the complaint putting the two times civil penalties at issue, and based on the two use offset calculations provided by Defendant that were not disputed as to the accuracy of the service records or the method of such calculation, the Court

finds Defendant has established by a preponderance of the evidence that the jurisdictional minimum amount in controversy has been met with the inclusion of two times civil penalties which put the amount in controversy at either $158,020.26, or $168,499.56.[6]  In sum, the Court concludes that Defendant has established complete diversity and an amount in controversy in this action exceeding $75,000.  Thus, Defendant has shown that, if Plaintiffs are successful in the action, it is likely that Plaintiff will recover well in excess of $75,000.  On this record, the Court recommends Plaintiff's motion be denied.

3.       The Court need not Factor Attorneys' Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met[,] [though] [t]he defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence."  Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (internal quotation marks and citations omitted).  If the plaintiff is legally entitled to future attorneys' fees if successful, "then there is no question that future [attorneys' fees] are 'at stake' in the litigation."  Fritsch v. Swift Transp. Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018) (quoting Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 417 (9th Cir. 2018)).  "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy [its] burden of proof."  Id. at 795.

The Song-Beverly Act provides for an award of attorneys' fees.  Cal. Civ. Code. §§ 1794(d), (e)(1).  Plaintiff seeks general attorneys' fees in the complaint.  (Compl. at Prayer ("[f]or reasonable attorney's fees and costs of suit").)  Therefore, attorneys' fees may be included in the amount in the amount in controversy estimate, provided Defendant meets its preponderance burden with respect to its proffered calculations.

Here, Plaintiffs argue that Defendant has not met its burden here, comparing the lack of information here to, for example in Brady v. Mercedes Benz USA, Inc., 243 F.Supp.2d 1004,

---

[6]  The Court finds the two times civil penalties has been put "at issue" by Plaintiffs' complaint.  However, even if the Court were to take the lower calculation of actual damages based on the use offset calculation above, $52,673.42, and assumed only a one half civil penalty (0.5 x $52,673.42 = $26,336.71), the total amount at issue, not even factoring potential attorneys' fees, would result in a total of $79,010.13.

1011 (N.D. Cal. 2002), where the court included an estimate of future attorneys' fees in the amount in controversy, but only because the parties had included both a declaration from plaintiff's counsel stating his hourly rate and an estimate of fees incurred to date, and a declaration from defendant's counsel detailing fee awards (not requests) in similar lemon law cases to calculate the amount in controversy.

Nevertheless, the court need not calculate or otherwise address the amount of attorneys' fees potentially at issue in this case since an amount in controversy exceeding $75,000 has already been established based upon the actual damages and civil penalties available under the Song-Beverly Act in this case should Plaintiffs prevail.

**C.    Alternative Request For Jurisdictional Discovery**

If the Court were inclined to grant Plaintiffs' motion to remand based on a finding of lack of evidence, Defendant would request the Court grant leave to conduct jurisdictional discovery rather than proceeding to directly remand the action.  See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1136 (9th Cir. 2003).  Plaintiffs respond that the request should be denied because the "vague request is 'based on little more than a hunch that it might yield jurisdictionally relevant facts.' "  Young v. FCA US LLC, No. 521CV00622JLSSHK, 2021 WL 5578723, at *3 (C.D. Cal. Nov. 30, 2021) (quoting Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008)).

Here, if the recommendation to deny the motion to remand is accepted, Defendant's request would be unnecessary and moot, and therefore the Court recommends denying the request for jurisdictional discovery.

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiffs' motion to remand (ECF No. 16) be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these

findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 28, 2023**

UNITED STATES MAGISTRATE JUDGE